money owed. This was proof of criminal offenses taking place. And again, just like Ohio - not a drop of concern! Obviously, nothing will be done short of a court order. This is a negligent attitude for people maintaining an agency with so much power.

95. On 10/31/02, The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed, via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$10,237.98 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 10/31/03 were + $ 11,271.46. For the month of October 2002, Tonya Marie Coffey (Nelson) received from me child support payments totaling $ 1,606.56. Money she conveniently neglected to inform the child support agency she received. All the while knowing they were pursuing me for over $10,000. And (1) from my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time, it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

96. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, <u>and take appropriate action when there is evidence that an error has occurred</u>. To admit that I had "evidence of fraud committed by our staff", and to do nothing about it, clearly is a complete disregard for the State IV-D plan. *18 U.S.C 1346* : Deprivation of right to honest services constitutes a form of mail and wire fraud.

97. On 11/30/02, The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed, via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$11,944.31 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 11/30/03 were + $ 11,271.46. For the month of November 2002, Tonya Marie Coffey (Nelson) received from me child support payments totaling $ 1,606.56. Money she conveniently neglected to inform the child support agency she received. All the while knowing they were pursuing me for over $11,000. And (1) from my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time, it happens a lot." - they should have known. Tonya Marie

Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

98. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, and take appropriate action when there is evidence that an error has occurred. To admit that I had "evidence of fraud committed by our staff", and to do nothing about it, clearly is a complete disregard for the State IV-D plan. *18 U.S.C 1346* : Deprivation of right to honest services constitutes a form of mail and wire fraud.

99. On 12/31/02, The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed, via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$13,650.64 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 12/31/03 were + $ 11,571.46. For the month of December 2002, Tonya Marie Coffey (Nelson) received from me child support payments totaling $ 1,906.56. Money she conveniently neglected to inform the child support agency she received. All the while knowing they were pursuing me for over $13,000. And (1) from my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time, it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

100. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, and take appropriate action when there is evidence that an error has occurred. To admit that I had "evidence of fraud committed by our staff", and to do nothing about it, clearly is a complete disregard for the State IV-D plan. *18 U.S.C 1346* : Deprivation of right to honest services constitutes a form of mail and wire fraud.

101. On 3/31/03 , The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed , via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$18,693.31 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 3/31/03 were + $ 11,571.46. For the month of March 2003, Tonya Marie Coffey (Nelson) received from me child support payments totaling $ 1,606.56. Money she conveniently neglected to inform the child support agency she received. All the while knowing they were pursuing me for over $18,000. And (1) from my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time , it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

102. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, and take appropriate action when there is evidence that an error has occurred. To admit that I had "evidence of fraud committed by our staff" , and to do nothing about it, clearly is a complete disregard for the State IV-D plan. *18 U.S.C 1346* : Deprivation of right to honest services constitutes a form of mail and wire fraud.

103. On 4/30/03 , The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed , via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$20,399.64 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 4/30/03 were + $ 11,571.46. For the month of April 2003, Tonya Marie Coffey (Nelson) received from me child support payments totaling $ 1,606.56. Money she conveniently neglected to inform the child support agency she received. All the while knowing they were pursuing me for over $20,000. And (1) from my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time , it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this

all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

104. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, and take appropriate action when there is evidence that an error has occurred. To admit that I had "evidence of fraud committed by our staff", and to do nothing about it, clearly is a complete disregard for the State IV-D plan. 18 U.S.C 1346 : Deprivation of right to honest services constitutes a form of mail and wire fraud.

105. On 5/31/03 , The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed , via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$22,105.97 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 5/31/03 were + $ 11,571.46. For the month of May 2003, Tonya Marie Coffey (Nelson) received from me child support payments totaling $ 1,606.56. Money she conveniently neglected to inform the child support agency she received. All the while knowing they were pursuing me for over $22,000. And (1) from my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time , it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

106. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, and take appropriate action when there is evidence that an error has occurred. To admit that I had "evidence of fraud committed by our staff", and to do nothing about it, clearly is a complete disregard for the State IV-D. 18 U.S.C 1346 : Deprivation of right to honest services constitutes a form of mail and wire fraud.

107. On 6/30/03 , The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed , via the United States Postal Service, to my home address, 57

Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$23,812.30 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 6/30/03 were + $ 9,964.90. (1) From my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time , it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

108. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, and take appropriate action when there is evidence that an error has occurred. To admit that I had "evidence of fraud committed by our staff" , and to do nothing about it, clearly is a complete disregard for the State IV-D plan. 18 U.S.C 1346 : Deprivation of right to honest services constitutes a form of mail and wire fraud.

109. On 7/06/03 , The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed , via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$23,812.30 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 7/06/03 were + $ 9,964.90. (1) From my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time , it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

110. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, and take appropriate action when there is evidence that an error has occurred. To admit that I had "evidence of fraud committed by our staff" , and to do nothing about it, clearly is a complete disregard for the State IV-D plan.

*18 U.S.C 1346* : Deprivation of right to honest services constitutes a form of mail and wire fraud.

111. On 7/31/03 , The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed , via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$27,224.96 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 7/31/03 were + $ 8,358.34. (1) From my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time , it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

112. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, <u>and take appropriate action when there is evidence that an error has occurred</u>. To admit that I had "evidence of fraud committed by our staff" , and to do nothing about it, clearly is a complete disregard for the State IV-D plan. *18 U.S.C 1346* : Deprivation of right to honest services constitutes a form of mail and wire fraud.

113. On 8/31/03 , The Commonwealth of Massachusetts, Department of revenue, Child Support Enforcement Division, P.O. Box 55144, Boston, Massachusetts 02205 generated a letter which they mailed , via the United States Postal Service, to my home address, 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter charged me with owing "$27,224.96 in arrears." Included in this letter was the threat to "increasing your income assignment by 25%, levy funds from your bank account, seize your assets, report this (fraudulent) charge to a credit reporting agency, and revoke your professional license.). ALL OF WHICH THEY DID. And this arrearage charge was fraudulent. My child support payment receipts as of 8/31/03 were + $ 8,751.78. (1) From my pleadings to the Massachusetts child support agency on 10/29/02, (2) from the agencies own admittance that "Mothers do this all the time , it happens a lot." - they should have known. Tonya Marie Coffey (Nelson) knew this arrearage charge was fraudulent. The Massachusetts CSEA knew I had evidence of this charge being fraudulent. The Massachusetts CSEA staff told me he suspected this charge to be wrong. The Massachusetts CSEA staff told me "Mothers do this all the time. It happens a lot." And yet, Marylin Ray Smith and her staff are doing nothing about these crimes, except of course, reporting the additional collections for the incentive program.

114. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of

Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, <u>and take appropriate action when there is evidence that an error has occurred</u>. To admit that I had "evidence of fraud committed by our staff", and to do nothing about it, clearly is a complete disregard for the State IV-D. *18 U.S.C 1346* : Deprivation of right to honest services constitutes a form of mail and wire fraud.

<u>The Federal Office of Child Support Enforcement</u>

115. The individuals at the state level, authorized by the Federal office of child support enforcement, deemed responsible and accountable for the state IV-D plans in Ohio and Massachusetts, both ignored their respective state IV-D plans when confronted with evidence of fraud being committed by their respective agencies. The plaintiff believes very strongly this was not a simple coincidence. This universal, multi-state non-adherence to their respective state plans is obviously a systemic problem from the top down.

| | |
|---|---|
| Subsection (a): | It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principle to use or invest, directly or indirectly, any part of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. |
| Subsection (b): | It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. |
| Subsection (c): | It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. |
| Subsection (d): | The engagement in a conspiracy to violate RICO. Conspired to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. The defendants agreed to participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity. |

116. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 301.10 State Plan. The State plan is a comprehensive statement submitted by the IV-D agency, describing the nature and scope of its program and <u>giving assurances that it will be administered in conformity with the specific requirements stipulated in title IV-D,</u> the

regulations in Subtitle A and this chapter of this title, and other applicable official issuances of the Department.

117. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.35 Administrative Complaint Procedure. (a) Each State must have in place an administrative complaint procedure, defined by the State, in place to allow individuals the opportunity to request an administrative review, <u>and take appropriate action when there is evidence that an error has occurred</u>. To admit that I had "evidence of fraud committed by our staff" , and to do nothing about it, clearly is a complete disregard for the State IV-D plan.

118. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 302.70 Required State Laws paragraph (a) *Required Laws*. The State plan shall provide that, in accordance with sections 454(20) and 466 of the Act and part 303 of this chapter, the State has in effect laws providing for, and has implemented procedures to improve, program effectiveness.

119. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 301.1 - General Definitions: *Past-due support* means the amount of support determined under a court order or an order of an administrative process established under State law for support and maintenance of a child or of a child and the parent with whom the child is living, which has not been paid. There was no $14,000 in past due support, because there was no court order for support. The Montgomery County Child Support Enforcement office violated the State of Ohio plan under title IV-D of the Social Security Act, as well as title IV-D of the Federal Social Security Act.

120. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 302.10 Statewide Operations. Paragraph (2) Regular planned examination and evaluation of operations in local offices by regularly assigned State staff, including regular visits by such staff; and through reports, controls, or other necessary methods. When two offices within the IV-D agency, are committing state and federal crimes, obviously, there is massive incompetence when it comes to evaluation of operations in local offices.

121. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.4 Establishment of Support Obligations. For all cases referred to the IV-D agency or applying undern302.33 of this chapter, the IV-D Agency must: (b) Utilize appropriate State statutes and legal processes in establishing the support obligation pursuant to 302.50 of this chapter. There was no utilization of state statutes and legal processes in establishing the support obligation that the Montgomery County Child Support Enforcement office used to garnish my wages at Beth Israel Hospital. The letter from Judge V. Michael Brigner of the

Montgomery County Court of Common Pleas makes this fact perfectly evident.

122. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.100 Procedures for income withholding. Paragraph (6) The withholding must be carried out in full compliance with all procedural due process requirements of the State.

123. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 303.100 Procedures for income withholding. Paragraph (8) The State must have procedures for promptly refunding to noncustodial parents amounts which have been improperly withheld. This policy is obviously also being completely ignored.

124. Title 45 - Public Welfare, Chapter III - Office of Child Support Enforcement (Child Support Enforcement Program), Administration For Children And Families, Department of Health and Human Services, Part 301 - State Plan Approval And Grant Procedures, Section 302.12 Single and Separate Organizational Unit. Paragraph (a) The State plan shall provide for the establishment or designation of a single and separate organizational unit to administer the IV-D plan. Such unit is referred to as the IV-D agency. Paragraph (3) . . . the IV-D agency shall have responsibility for securing compliance with the requirements of the State plan by such agency or officials.


### The Federal Internet Crimes Perpetrated by Tonya Marie Coffey (Nelson)

125. On July 27, 2001, Tonya Marie Coffey (Nelson) charged me with sending to her a pornographic e-mail. The same day, Tonya Marie Coffey (Nelson) in deposition - under oath - stated she in fact received the above stated pornographic e-mail from her boyfriend/husband Tony Sturgill.

126. On February 8, 2002, two days before the my birthday, Tonya Marie Coffey (Nelson) sent, via the internet, to me - as well as to nine (9) additional e-mail addresses listed below - another horrific abusive e-mail. Her e-mail read as follows:

> "Rob Nelson 57 Charter Street Apt 2A Boston Male Hello all I am a radiology -CAT scan tech in a Boston hospital I am alos a loser I have 3 kids in Ohio that I never see I also haven't sent them any birthday presents or cards in the past 3 yrs I am also behind 18,000.00 in back child support I keep quitting my job so they cannot get there money I also am a convicted felony I stole checks from my ex wife and sign here name to it so I could make myself look good in front of other people it was for 7000 I did this while my wife and kids didn't have food in the house if any one knows this loser please e mail me so we might be able to help the kids get there money."

This horrific e-mail was sent to nine (9) other e-mail addresses

    1)    Jvarma

    2)     JAN0007
    3)     MISSKI8603
    4)     JP9119621
    5)     TerryLCNT
    6)     JButlervin
    7)     RIKA18
    8)     SharoSam
    9)     KiLa134

127. Part of the extremely malicious slander contained in this e-mail was the charge that the I was "behind 18,000 in back child support." Tonya Marie Coffey (Nelson) began these fraudulent arrearage charges in December 1999. One week after I filed for contested divorce. The above e-mail was sent on February 8, 2002. Over 25 months later, she is still using fraudulent child support charges to validate in her mind the committing of federal crimes against me. This is the price I've paid for my spouse running off with her boyfriend.

128. On August 4, 2002, in the presence of a friend of mine, I turned on my personal computer located in my apartment at 57 Charter Street, Apt 2A, Boston, Massachusetts. I logged on to AOL to read an e-mail message from a friend. Less than 120 seconds after being logged on to AOL, I began receiving the following instant messages:

    From: Optinel        hey dead beat   heard springfield is looking for you

(On July 27, 2001, Tonya Marie Coffey (Nelson) stated in her deposition, under oath, that Optinel was her e-mail address on her personal computer located in her residence at 3316 Bristol Drive, Springfield, Ohio. My eldest daughter Thomasina, has also verified 'Optinel' as one of Tonya Marie Coffey (Nelson)'s e-mail addresses.)

My friend and I did not reply to the above 'instant message'. We simply watched the computer monitor for the next message to appear only minutes later, which read:

    From: OptiNel        what's the matter cat got your tongue or since your lawyer
                                     dumped you you can't talk for yourself

My friend and I still did not reply. The next message read:

    From: OptiNel        do you even care about the kids health

My friend and I still did not reply. The next message read:

    From: OptiNel        hows the fiance doing  you know the one that denies even
                                     knowing you

My friend and I still did not reply. The next message read:

    From: OptiNel        kids in college yet

I then turned off my computer.

129. The 'Instant Messages' feature of AOL allows Tonya Marie Coffey (Nelson) the opportunity to 'see' when I log on to AOL on my personal computer. Tonya Marie Coffey

(Nelson), monitoring her personal computer in her residence in Springfield, Ohio in order to send malicious, abusive, and harassing 'Instant Messages' interstate to my personal computer in Boston, Massachusetts is the behavior of a predator stalking her victim.

130. I have since had to discontinue my AOL service. This is the price I've paid for my spouse running off with her boyfriend eight years prior.

Count One

RICO VIOLATION
Subsection (a)

131. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here.

132. At all times relevant to this complaint, the plaintiff was, and is, a "person" who has been, and continues to be, injured in "his business or property" as defined in Section 1961(3).

133 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

      (4) Brockton, Massachusetts. Tonya Marie Coffey (Nelson) obsessively seeking, then locating the plaintiffs last three places of employment for the purpose of maintaining her interstate stalking and predatory behaviour.

      (5) The Defendant, Tonya Marie Coffey (Nelson) coercing the child support enforcement agency - in three counties, and two states - to move to wrongfully, and illegally incarcerate the plaintiff.

139. The pattern of racketeering engaged in by the defendants, involved fraudulent acts in support of the above schemes , mail fraud (18 U.S.C 1341), wire fraud (18 U.S.C 1343), Interference with commerce, robbery, or extortion ( 18 U.S.C 1951(n) ), Racketeering ( 18 U.S.C 1952(o) ), and the Hobbs Act ( 18 U.S.C 1951 ), all of which is "racketeering activity" as defined in 18 U.S.C 1961(b). And at least two of the racketeering acts are connected by a common scheme, plan, or motive.

140. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property.

141. The predicate acts committed by the defendants relating to and include, but are not limited to, those described earlier in this complaint and the following:

      (1)    Mail Fraud  18 U.S.C  1341(h)
      (2)    Wire Fraud  18 U.S.C  1343(i)
      (3)    Interference with commerce, robbery, or extortion  18 U.S.C 1951(n)
      (4)    Racketeering  18 U.S.C 1952(o)
      (5)    The Hobbs Act

142. At all times relevant to this complaint, the defendants have earned some income through the commission of at least two racketeering acts sufficiently related to constitute a pattern, as defined in section 1962(a).

143. At all times relevant to this complaint, at least two of the racketeering acts were connected by a common scheme, plan, and/or motive.

144. At all times relevant to this complaint, the defendants used such income to operate the enterprise.

COUNT TWO

RICO VIOLATION
Subsection (b)

145. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here.

146. At all times relevant to this complaint, the plaintiff was, and is, a "person" who has

been, and continues to be, injured in "his business or property" as defined in Section 1961(3).

147 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

148. At all times relevant to this complaint, the defendants constituted an association-in-fact, characterized by (1) a common purpose, (2) an ongoing formal organization, and (3) were personnel who functioned as a continuing unit.

149. At all times relevant to this complaint, non-party Child Support Enforcement Agency was and is an enterprise, functioning in all 50 states, as defined by U.S.C 1961(4) that is engaged, and its activities affect interstate commerce.

150. At all times relevant to this complaint, the defendants knowingly and willfully associated with the enterprise, or were employed by the enterprise, and conducted and participated in the conduct of the enterprises affairs, and were able to committ the acts solely by virtue of the position of involvement in the affairs of the enterprise, directly and indirectly, by and through a pattern racketeering acitivity in violation of U.S.C 1962(c).

151. At all times relevant to this complaint, the defendants were persons employed by and or associated with the enterprise engaged in, and whose activities affect, interstate commerce, conducted and or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

152. The pattern of racketeering engaged in by the defendants, involved five separate but related schemes, in four (4) different counties, and two (2) different states, carried out from at least 1999 to the present, and directed at the Plaintiff. These schemes included:

 (1) Montgomery County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan, approved by the Secretary for Health and Human Services, for the purpose of : (1) extorting over $15,000 from the plaintiff, (2) illegally garnishing the plaintiffs wages to the extent that the plaintiff faced eviction, (3) forcing the plaintiff to have to work two jobs just to survive, (4) tarnishing the plaintiff credit reports, (5) suspending the plaintiff's drivers license, (6) suspending the plaintiffs professional license, (7) prevent tthe plaintiff from being able to conduct business anywhere in the country, and (8) all the while preventing any and all contact between the plaintiff and his children.

 (2) Clark County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan approved by the Secretary for Health and Human Services, for the purpose of : (1) having the plaintiff wrongfully incarcerated, (2) extort monies from the plaintiff, (3) seize the plaintiffs bank account, (4) seize the plaintiffs tax returns, (5) prevent the plaintiff from being able to conduct business anywhere in the country, and (8) all the while preventing any and all contact between the plaintiff and his children.

 (3) Suffolk County, Massachusetts. Tonya Marie Coffey (Nelson), through the Ohio

child support enforcement agency, solicits, encourages, and/or convinces the Massachusetts child support enforcement agency to continue to threaten and take from the plaintiff every asset he is able to accrue. All the while maintaining fraudulent arrearage charges against the plaintiff, to maintain undue hardships upon the plaintiff by requiring the plaintiff to support two households while taking from the plaintiff, his bank account, his drivers license, his professional license, his tax returns, etc.

(4) Brockton, Massachusetts. Tonya Marie Coffey (Nelson) obsessively seeking, then locating the plaintiffs last three places of employment for the purpose of maintaining her interstate stalking and predatory behaviour.

(5) The Defendant, Tonya Marie Coffey (Nelson) coercing the child support enforcement agency - in three counties, and two states - to move to wrongfully, and illegally incarcerate the plaintiff.

153. The pattern of racketeering engaged in by the defendants, involved fraudulent acts in support of the above schemes , mail fraud (18 U.S.C 1341), wire fraud (18 U.S.C 1343), Interference with commerce, robbery, or extortion ( 18 U.S.C 1951(n) ), Racketeering ( 18 U.S.C 1952(o) ), and the Hobbs Act ( 18 U.S.C 1951 ), all of which is "racketeering activity" as defined in 18 U.S.C 1961(b). And at least two of the racketeering acts are connected by a common scheme, plan, or motive.

154. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property.

155. The predicate acts committed by the defendants relating to and include, but are not limited to, those described earlier in this complaint and the following:

(1) Mail Fraud 18 U.S.C 1341(h)
(2) Wire Fraud 18 U.S.C 1343(i)
(3) Interference with commerce, robbery, or extortion 18 U.S.C 1951(n)
(4) Racketeering 18 U.S.C 1952(o)
(5) The Hobbs Act

156. At all times relevant to this complaint, the defendants had some interest in or control over the enterprise.

157. At all times relevant to this complaint, this interest or control was associated with or connected to the pattern of racketering activity.

COUNT THREE

RICO VIOLATION
Subsection (c)

158. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here.

159. At all times relevant to this complaint, the plaintiff was, and is, a "person" who has been, and continues to be, injured in "his business or property" as defined in Section 1961(3).

160 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

161. At all times relevant to this complaint, the defendants constituted an association-in-fact, characterized by (1) a common purpose, (2) an ongoing formal organization, and (3) were personnel who functioned as a continuing unit.

162. At all times relevant to this complaint, non-party Child Support Enforcement Agency was and is an enterprise, functioning in all 50 states, as defined by U.S.C 1961(4) that is engaged, and its activities affect interstate commerce.

163. At all times relevant to this complaint, the defendants knowingly and willfully associated with the enterprise, or were employed by the enterprise, and conducted and participated in the conduct of the enterprises affairs, and were able to committ the acts solely by virtue of the position of involvement in the affairs of the enterprise, directly and indirectly, by and through a pattern racketeering acitivity in violation of U.S.C 1962(c).

164. At all times relevant to this complaint, the defendants were persons employed by and or associated with the enterprise engaged in, and whose activities affect, interstate commerce, conducted and or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

165. The pattern of racketeering engaged in by the defendants, involved five separate but related schemes, in four (4) different counties, and two (2) different states, carried out from at least 1999 to the present, and directed at the Plaintiff. These schemes included:

   (1) Montgomery County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan, approved by the Secretary for Health and Human Services, for the purpose of : (1) extorting over $15,000 from the plaintiff, (2) illegally garnishing the plaintiffs wages to the extent that the plaintiff faced eviction, (3) forcing the plaintiff to have to work two jobs just to survive, (4) tarnishing the plaintiff credit reports, (5) suspending the plaintiff's drivers license, (6) suspending the plaintiffs professional license, thereby, (7) preventing tthe plaintiff from being able to conduct business anywhere in the country, and  (8) all the while preventing any and all contact between the plaintiff and his children.

   (2) Clark County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan approved by the Secretary for Health and Human Services, for the purpose of : (1) having the plaintiff wrongfully incarcerated, (2) extort monies from the plaintiff, (3) seize the plaintiffs bank account, (4) seize the plaintiffs tax returns, (5) prevent the plaintiff from being able to conduct business anywhere in the

country, and (8) all the while preventing any and all contact between the plaintiff and his children.

(3) Suffolk County, Massachusetts. Tonya Marie Coffey (Nelson), through the Ohio child support enforcement agency, solicits, encourages, and/or convinces the Massachusetts child support enforcement agency to continue to threaten and take from the plaintiff every asset he is able to accrue. All the while maintaining fraudulent arrearage charges against the plaintiff, to maintain undue hardships upon the plaintiff by requiring the plaintiff to support two households while taking from the plaintiff, his bank account, his drivers license, his professional license, his tax returns, etc.

(4) Brockton, Massachusetts. Tonya Marie Coffey (Nelson) obsessively seeking, then locating the plaintiffs last three places of employment for the purpose of maintaining her interstate stalking and predatory behaviour.

(5) The Defendant, Tonya Marie Coffey (Nelson) coercing the child support enforcement agency - in three counties, and two states - to move to wrongfully, and illegally incarcerate the plaintiff.

166. The pattern of racketeering engaged in by the defendants, involved fraudulent acts in support of the above schemes , mail fraud (18 U.S.C 1341), wire fraud (18 U.S.C 1343), Interference with commerce, robbery, or extortion ( 18 U.S.C 1951(n) ), Racketeering ( 18 U.S.C 1952(o) ), and the Hobbs Act ( 18 U.S.C 1951 ), all of which is "racketeering activity" as defined in 18 U.S.C 1961(b). And at least two of the racketeering acts are connected by a common scheme, plan, or motive.

167. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) has and is,suffering damage to his business and property.

168. The predicate acts committed by the defendants relating to and include, but are not limited to, those described earlier in this complaint and the following:

(1) Mail Fraud  18 U.S.C  1341(h)
(2) Wire Fraud  18 U.S.C  1343(i)
(3) Interference with commerce, robbery, or extortion  18 U.S.C 1951(n)
(4) Racketeering  18 U.S.C 1952(o)
(5) The Hobbs Act


COUNT FOUR

RICO VIOLATION
Subsection (d)

169. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here.

170. At all times relevant to this complaint, the plaintiff was, and is, a "person" who has

been, and continues to be, injured in "his business or property" as defined in Section 1961(3).

171 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

172. At all times relevant to this complaint, the defendants constituted an association-in-fact, characterized by (1) a common purpose, (2) an ongoing formal organization, and (3) were personnel who functioned as a continuing unit.

173. At all times relevant to this complaint, non-party Child Support Enforcement Agency was and is an enterprise, functioning in all 50 states, as defined by U.S.C 1961(4) that is engaged, and its activities affect interstate commerce.

174. At all times relevant to this complaint, the defendants knowingly and willfully associated with the enterprise, or were employed by the enterprise, and conducted and participated in the conduct of the enterprises affairs, and were able to committ the acts solely by virtue of the position of involvement in the affairs of the enterprise, directly and indirectly, by and through a pattern racketeering acitivity in violation of U.S.C 1962(c).

175. At all times relevant to this complaint, the defendants were persons employed by and or associated with the enterprise engaged in, and whose activities affect, interstate commerce, conducted and or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

176. The pattern of racketeering engaged in by the defendants, involved five separate but related schemes, in four (4) different counties, and two (2) different states, carried out from at least 1999 to the present, and directed at the Plaintiff. These schemes included:

(1) Montgomery County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan, approved by the Secretary for Health and Human Services, for the purpose of : (1) extorting over $15,000 from the plaintiff, (2) illegally garnishing the plaintiffs wages to the extent that the plaintiff faced eviction, (3) forcing the plaintiff to have to work two jobs just to survive, (4) tarnishing the plaintiff credit reports, (5) suspending the plaintiff's drivers license, (6) suspending the plaintiffs professional license, (7) prevent tthe plaintiff from being able to conduct business anywhere in the country, and (8) all the while preventing any and all contact between the plaintiff and his children.

(2) Clark County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan approved by the Secretary for Health and Human Services, for the purpose of : (1) having the plaintiff wrongfully incarcerated, (2) extort monies from the plaintiff, (3) seize the plaintiffs bank account, (4) seize the plaintiffs tax returns, (5) prevent the plaintiff from being able to conduct business anywhere in the country, and (8) all the while preventing any and all contact between the plaintiff and his children.

(3) Suffolk County, Massachusetts. Tonya Marie Coffey (Nelson), through the Ohio

child support enforcement agency, solicits, encourages, and/or convinces the Massachusetts child support enforcement agency to continue to threaten and take from the plaintiff every asset he is able to accrue. All the while maintaining fraudulent arrearage charges against the plaintiff, to maintain undue hardships upon the plaintiff by requiring the plaintiff to support two households while taking from the plaintiff, his bank account, his drivers license, his professional license, his tax returns, etc.

(4) Brockton, Massachusetts. Tonya Marie Coffey (Nelson) obsessively seeking, then locating the plaintiffs last three places of employment for the purpose of maintaining her interstate stalking and predatory behaviour.

(5) The Defendant, Tonya Marie Coffey (Nelson) coercing the child support enforcement agency - in three counties, and two states - to move to wrongfully, and illegally to incarcerate the plaintiff.

177. The pattern of racketeering engaged in by the defendants, involved fraudulent acts in support of the above schemes, mail fraud (18 U.S.C 1341), wire fraud (18 U.S.C 1343), Interference with commerce, robbery, or extortion ( 18 U.S.C 1951(n) ), Racketeering ( 18 U.S.C 1952(o) ), and the Hobbs Act ( 18 U.S.C 1951 ), all of which is "racketeering activity" as defined in 18 U.S.C 1961(b). And at least two of the racketeering acts are connected by a common scheme, plan, or motive.

178. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property.

179. The predicate acts committed by the defendants relating to and include, but are not limited to, those described earlier in this complaint and the following:

(1) Mail Fraud  18 U.S.C  1341(h)
(2) Wire Fraud  18 U.S.C  1343(i)
(3) Interference with commerce, robbery, or extortion  18 U.S.C 1951(n)
(4) Racketeering  18 U.S.C 1952(o)
(5) The Hobbs Act

180. At all times relevant to this complaint, the defendants have earned some income through the commission of at least two racketeering acts sufficiently related to constitute a pattern, as defined in section 1962(a).

181. At all times relevant to this complaint, at least two of the racketeering acts were connected by a common scheme, plan, and/or motive.

182. At all times relevant to this complaint, the defendants used such income to operate the enterprise.

183. At all times relevant t this complaint, each defendant agreed to participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity, by actually committing two or more racketeering acts.

COUNT FIVE

Mail fraud 18 U.S.C 1341(h)

184. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here

185. Plaintiff believes that defendants committed numerous predicate acts of mail fraud and wire fraud as part of, and that as a result of this fraud, the plaintiff sustained, and continues to sustain, significant losses.

186. (1) (a) On November 11,1999, in response to my filing for contested divorce, Tonya Marie Coffey (Nelson) filed a fraudulent affidavit in the Clark County, Ohio Court of Common Pleas, stating "In Montgomery county, Ohio Common Pleas court Case No. 94 DV-265, plaintif is in arrears in child support the approximate amount of $14,900.00." Less than two weeks later, Tonya Marie Coffey (Nelson) personally met with the staff of the Montgomery county child support enforcement office and convinced them to break the law and to garnish my wages to collect this extortionist monies. On November 24,1999, the Montgomery county, Ohio child support enforcement agency, located at 14 W. Fourth Street, dayton, Ohio 45401, generated and mailed, via the United States postal service, a letter adressed to an received by the plaintiff at his home in Boston located at 57 Charter Street, Apt 2A, Boston, Massachusetts, 02113. This letter stated the plaintiff owed "$14,474.45 in child support arrears" for case no. 94-DV-265. This was the first contact the plaintiff had ever had with the child support enforcement agency.

187. (i) The scheme: To use the child support enforcement agency to extort approximately $15,000 from the plaintiff and slander the plaintiff's name.

188. (ii) The mailing was cited above in paragraph (a).

189. (iii) The specific intent: The fact that Tonya Marie Coffey (Nelson) filed the fraudulent affidavit <u>before</u> meeting with the child support enforcement agency staff demonstrates the child support enforcement agency staff was re-acting to Tonya Marie Coffey (Nelson's) coercion, and not vica-verca. The child support enforcement agency was acting as an agent of Tonya Marie Coffey (Nelson).

190. (iv) Contemplated Harm: To garnish the plaintiff's wages to such an extent, the plaintiff would literally,be unable to survive. To take the plaintiff's bank account. To take the plaintiff's drivers license. To take the plaintiff's professional license. To harm the plaintiff's credit report status.

191. (v) Time: November 11, 1999 and November 24, 1999.

192. (vi) Place: Mailing generated and sent from the offices of the Montgomery County, Ohio Child Support Enforcement Agency located at 14 W. Fourth Street, Dayton, Ohio 45401, and addressd to and recieved by plaintiff at 57 Charter Street, Apt 2A, Boston, Massachusetts 02113.

193. (vii) Content of Communication: The letter falsely stated the plaintiff owed "$14,474.45 in child support arrears" for case no. 94-DV-265. And if the plaintiff did not pay, the child support enforcement agency would: (a) garnish my wages, (b) take my driver's