UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
04-10845-NMG

RALPH R. NELSON

Plaintiff

v.

TONYA MARIE COFFEY (NELSON), ET AL.

Defendants

REPORT AND RECOMMENDATION
ON MOTIONS TO DISMISS

December 20, 2004

COHEN, M.J.

In this case, the plaintiff, Ralph R. Nelson, in a prolix complaint consisting of some 297 paragraphs, brings suit against his former wife, Tonya Marie Coffey, a number of employees of the Ohio Child Support Enforcement Agency,[1] two employees of the Ohio Department of Job and Family Services,[2] a judge of the Ohio Common

---

[1]     Defendants Carla Townsend, Robert Suver, Dannetta Graves, Virginia Brown, Sandra Dendenhall, Debbie Martineau, and Holly Payne.

[2]     China L. Widener and Tom Hayes.

Pleas Court,[3] the Commissioner of the Federal Office of Child Support Division of the United States Department of Health and Human Resources,[4] and the Commissioner of the Department of Revenue for the Commonwealth of Massachusetts.[5]  At bottom, plaintiff alleges that his ex-wife, Tonya, trumped up abuse and other charges against him in the Ohio courts, resulting in the loss of custodial and visitation rights with the children born of that marriage, and also resulting in the assessment of child support payments.  All of this, plaintiff says, is based on false and fraudulent statements made by his ex-wife, Tonya.[6]  Because of Tonya's fraudulent ways, and the Ohio officials' wholesale and blind acceptance of that fraud, he has, so he says, lost custodial and visitation rights with his children, as well as large sums of money which he was required to pay as child support based on decisions of Judge Salway in Ohio, and the enforcement efforts of the other Ohio officials and the Department of Revenue for the Commonwealth of Massachusetts.  Based on all of this, he brings suit against all of the defendants under the federal Racketeer Influenced and Corrupt Organization Act,[7] the

---

[3]    Magistrate Joel Salway.

Except where otherwise specifically delineated, all of the defendants who hale from Ohio and who are identified in this note and notes 1 and 2, *supra*, will hereinafter be referred as the Ohio defendants.

[4]    Sherri Z. Heller.

[5]    Marilyn Ray Smith.

[6]    Which, for the purpose of the motions to dismiss currently before this court, and that purpose only, this court assumes to be true.

[7]    18 U.S.C. 1962.  Not to leave a stone unturned, he brings suit under Section 1962(a) (Count 1), Section 1962(b) (Count 2), Section 1962(c) (Count 3), and Section 1964(d) (Count 4).

federal mail fraud statute (18 U.S.C. 1341),[8] and the federal Hobbs Act (18 U.S.C. 1951).[9]

All of the Ohio defendants, as well as the Commissioner of the Department of Revenue for the Commonwealth of Massachusetts have moved to dismiss on a host of ground, including failure to state a claim for relief on the federal question counts.[10] Those motions to dismiss, in turn, were referred to this court for report and recommendation consistent with the provisions of 28 U.S.C. § 636(b) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts.[11]

For the reasons which follow, this court recommends that the district judge dismiss all of the federal claims with prejudice for failure to state a claim upon which relief may be granted, and decline to entertain jurisdiction over the remaining state law claims.

1.    RICO - 18 U.S.C. § 1962(a) - Count 1

In Count 1 of the complaint, plaintiff attempts to assert a cause under the

---

[8]    Count 5.  In his complaint, he references the statute as 18 U.S.C. § 1341(h), but there is no subparagraph (h) under Section 1341.

[9]    Count 8.

Plaintiff has also alleged various and sundry state law claims - none of which need be reached for the reasons set forth below.

[10]    To wit, the federal Racketeer Influenced and Corrupt Organization Act counts,  the federal mail fraud statute count, and the federal Hobbs Act count.

[11]    The Commissioner of the Federal Office of Child Support Division of the United States Department of Health and Human Resources has also filed a motion to dismiss based on failure to complete service, but that motion has not, as of yet, been referred to this court.

provisions of 18 U.S.C. § 1962(a).[12]  He fails to do so.

Section 1962(a) provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United

---

[12]        In particular, he alleges:

131. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here.

132. At all times relevant to this complaint, the plaintiff was, and is, a "person" who has been, and continues to be, injured in "his business or property" as defined in Section 1961(3).

133 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

(4) Brockton, Massachusetts. Tonya Marie Coffey (Nelson) obsessively seeking, then locating the plaintiffs last three places of employment for the purpose of maintaining her interstate stalking and predatory behaviour.

(5) The Defendant, Tonya Marie Coffey (Nelson) coercing the child support enforcement agency - in three counties, and two states - to move to wrongfully, and illegally incarcerate the plaintiff.

139. The pattern of racketeering engaged in by the defendants, involved fraudulent sets in support of the above schemes , mail fraud (18 U.S.C 1341), wire fraud (18 U.S.C 1343), Interference with commerce, robbery, or extortion ( 18 U.S.C 1951(n) ), Racketeering ( 18 U.S.C 1952(o) ), and the Hobbs Act ( 18 U.S.C 1951), all of which is "racketeering activity" as defined in 18 U.S.C 1961(b)_ And at least two of the racketeering acts are connected by a common scheme, plan, or motive.

140. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property.

141. The predicate acts committed by the defendants relating to and include, but are not limited to, those described earlier in this complaint and the following:

(1) Mail Fraud 18 U.S.C 1341(h)
(2) Wire Fraud 18 U.S.C 1343(1)
(3) Interference with commerce, robbery, or extortion 18 U.S.C 1951(n)
(4) Racketeering 18 U.S.C 1952(o) (5) The Hobbs Act

142. At all times relevant to this complaint, the defendants have earned some income through the commission of at least two racketeering acts sufficiently related to constitute a pattern, as defined in section 1962(a).

143. At all times relevant to this complaint, at least two of the racketeering acts were connected by a common scheme, plan, and/or motive.

144. At all times relevant to this complaint, the defendants used such income to operate the enterprise. (Emphasis added).

States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer. (Emphasis added).

In his complaint, plaintiff alleges that he was injured in his business or property on account of the alleged racketeering acts committed by the defendants.[13]  But that does not make out a claim under Section 1962(a).  As our Court of Appeals has explained (*Compagnie de Reassurance v. New England Reinsur.*, 57 F.3d 56, 91-92 (1st Cir. 1995)):

> In order to recover in a civil RICO action, a plaintiff must prove both that the defendant violated one of the provisions of 18 U.S.C. § 1962 <u>and that the plaintiff was injured "in his business or property by reason of" the defendant's violation</u>.  18 U.S.C. § 1964(c).   Thus, in proving a right to recover for a RICO violation premised upon § 1962(a), <u>the plaintiffs had to prove that they were harmed by reason of NERCO's use or investment of income derived from a pattern of racketeering activity in some enterprise</u> (here alleged to be Graham Watson) engaged in interstate or foreign commerce.  18 U.S.C. §§ 1962(a), 1964(c).   This they failed to do.  Even assuming that they had been defrauded through the use of the mails or international wires, see 18 U.S.C. § 1961(1)(B), that alone is not enough to show that they were harmed additionally by NERCO's use or investment of the proceeds of that fraud to establish or operate Graham Watson.  *See*, *e.g.*, *Lightning Lube, Inc. v. Witco Corp.*,

---

[13]    To wit, in Paragraph 140 of his complaint:

140. <u>As a result of the pattern of racketeering activity</u>, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property. (Emphasis added).

4 F.3d 1153, 1188 (3d Cir.1993) ("the plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves").  The plaintiffs have simply "repeat[ed] the crux of [their] allegations in regard to the pattern of racketeering activity." *Id.* (Emphasis added).

In this case, plaintiff has not alleged, and, indeed, cannot responsibly allege,[14] that any investment of income derived from a pattern of racketeering caused injury to his property or business.  This court accordingly recommends that Count 1 be dismissed for failure to state a claim upon which relief may be granted.

2.    RICO - 18 U.S.C. § 1962(b) - Count 2

In Count 2 of the complaint, plaintiff attempts to assert a cause under the provisions of 18 U.S.C. § 1962(b).[15]  Here he fares no better on his score.

---

[14]    To the extent that plaintiff complains about injury to his property, the entire gist of his complaint is that child support arrearages were collected by the defendants.  Those child support payments, in turn, went to the plaintiff's ex-wife on behalf of the children, not to the Ohio defendants or the Commissioner of the Department of Revenue of the Commonwealth of Massachusetts.  Plaintiff can thus hardly say that those monies were invested in any enterprise, much less invested in a manner which, in and of itself, caused injury to his property or his business.

[15]    To wit:

145. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here.

146. At all times relevant to this complaint, the plaintiff was, and is, a "person" who has been, and continues to be, injured in "his business or property" as defined in Section 1961(3).

147 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

148 At all times relevant to this complaint, the defendants constituted an association-in-fact, characterized by (1) a common purpose, (2) an ongoing formal organization, and (3) were personnel who functioned as a continuing unit.

149. At all times relevant to this complaint, non-party Child Support Enforcement Agency was and is an enterprise, functioning in all 50 states, as defined by U.S.C 1961(4) that is engaged, and its activities affect interstate commerce.

150. At all times relevant to this complaint, the defendants knowingly and willfully associated with the enterprise, or were employed by the enterprise, and conducted and participated in the conduct of the enterprises affairs, and were able to commit the acts solely by virtue of the position of involvement in the affairs of the enterprise, directly and indirectly, by and through a pattern

*(continued...)*

---

[15]        (...continued)
racketeering activity [sic] in violation of U.S.C 1962(c).

151. At all times relevant to this complaint, the defendants were persons employed by and or associated with the enterprise engaged in, and whose activities affect, interstate commerce, conducted and or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

152. The pattern of racketeering engaged in by the defendants, involved five separate but related schemes, in four (4) different counties, and two (2) different states, carried out from at least 1999 to the present, and directed at the Plaintiff. These schemes included:

(1) Montgomery County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan, approved by the Secretary for Health and Human Services, for the purpose of : (1) extorting over $15,000 from the plaintiff, (2) illegally garnishing the plaintiffs wages to the extent that the plaintiff faced eviction, (3) forcing the plaintiff to have to work two jobs just to survive, (4) tarnishing the plaintiff credit reports, (5) suspending the plaintiff's drivers license, (6) suspending the plaintiffs professional license, (7) prevent the plaintiff from being able to conduct business anywhere in the country, and (8) all the while preventing any and all contact between the plaintiff and his children.

(2) Clark County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV-D plan approved by the Secretary for Health and Human Services, for the purpose of : (1) having the plaintiff wrongfully incarcerated, (2) extort monies from the plaintiff, (3) seize the plaintiffs bank account, (4) seize the plaintiffs tax returns, (5) prevent the plaintiff from being able to conduct business anywhere in the country, and (8) ail the while preventing any and all contact between the plaintiff and his children.

(3) Suffolk County, Massachusetts. Tonya Marie Coffey (Nelson), through the Ohio child support enforcement agency, solicits, encourages, and/or convinces the Massachusetts child support enforcement agency to continue to threaten and take from the plaintiff every asset he is able to accrue. All the while maintaining fraudulent arrearage charges against the plaintiff, to maintain undue hardships upon the plaintiff by requiring the plaintiff to support two households while taking from the plaintiff, his bank account, his drivers license, his professional license, his tax returns, etc.

(4) Brockton, Massachusetts. Tonya Marie Coffey (Nelson) obsessively seeking, then locating the plaintiffs last three places of employment for the purpose of maintaining her interstate stalking and predatory behaviour.

(5) The Defendant, Tonya Marie Coffey (Nelson) coercing the child support enforcement agency - in three counties, and two states - to move to wrongfully, and illegally incarcerate the plaintiff.

153. The pattern of racketeering engaged in by the defendants, involved fraudulent acts in support of the above schemes , mail fraud (18 U.S.C 1341), wire fraud (18 U.S.C 1343), Interference with commerce, robbery, or extortion ( 18 U.S.C 1951(n) ), Racketeering ( 18 U.S.C 1952(o) ), and the Hobbs Act ( 18 U.S.C 1951), all of which is "racketeering activity" as defined in 18 U.S.C 1961(b). And at least two of the racketeering acts are connected by a common scheme, plan, or motive.

154. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property.

155. The predicate acts committed by the defendants relating to and include, but are not limited to, those described earlier in this complaint and the following:

        (1) Mail Fraud 18 U.S.C 134i(h)

(continued...)

Section 1962(b) provides:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt <u>to acquire or maintain, directly or indirectly, any interest in or control of any enterprise</u> which is engaged in, or the activities of which affect, interstate or foreign commerce. (Emphasis added).

Under Count 2 of his complaint, plaintiff alleges that he was injured in his business or property on account of the alleged racketeering acts committed by the defendants.[16] But that does not make out a claim under Section 1962(b). As our Court of Appeals continued its holding in (*Compagnie de Reassurance, supra*, at 92):

> Under § 1962(b), <u>the plaintiffs had to show that they were harmed by reason of NERCO's acquisition or maintenance of control of an enterprise through a pattern of racketeering activity</u>. Again, even assuming that plaintiffs proved the underlying RICO violation, they failed to prove any harm beyond that resulting from the fraud which constituted the predicate act. *See*, *e.g.*, *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1231 (D.C.Cir.1991) ("plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation"). (Emphasis added).

In this case, plaintiff has not alleged, and, again cannot responsibly allege, that any <u>acquisition or maintenance of control</u> of an enterprise through a pattern of

---

[15]    (...continued)
(2) Wire Fraud 18 U.S.C 1343(i) (3) interference with commerce, robbery, or extortion 18 U.S.C 1951(n) (4) Racketeering 18 U.S.C 1952(o) (5) The Hobbs Act

156. At all times relevant to this complaint, the defendants had some interest in or control over the enterprise.

157. At all times relevant to this complaint, this interest or control was associated with or connected to the pattern of racketering [sic] activity. (Emphasis added).

[16]    To wit, in Paragraph 154 of his complaint:

154. <u>As a result of the pattern of racketeering activity</u>, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property. (Emphasis added).

racketeering caused injury to his property or business.  This court accordingly

recommends that Count 2 be dismissed for failure to state a claim upon which relief

may be granted.

    3.    <u>RICO - 18 U.S.C. § 1962(c) - Count 3</u>

    In Count 3 of the complaint, plaintiff, adding to that already alleged,

attempts to assert a cause under the provisions of 18 U.S.C. § 1962(c).[17]   And, once

---

[17]    To wit:

158. Plaintiff incorporates by reference paragraphs 1 through 130 as if fully repeated here.

159. At all times relevant to this complaint, the plaintiff was, and is, a "person" who has been, and continues to be, injured in "his business or property" as defined in Section 1961(3).

160 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

161. At all times relevant to this complaint, <u>the defendants constituted an association-in-fact, characterized by (1) a common purpose, (2) an ongoing formal organization, and (3) were personnel who functioned as a continuing unit</u>.

162. At all times relevant to this complaint, non-party Child Support Enforcement Agency was and is an enterprise, functioning in all 50 states, as defined by U.S.C 1961(4) that is engaged, and its activities affect Interstate commerce.

163. At all times relevant to this complaint, the defendants knowingly and willfully associated with the enterprise, or were employed by the enterprise, and conducted and participated in the conduct of the enterprises affairs, and were able to commit the acts solely by virtue of the position of involvement in the affairs of the enterprise, directly and indirectly, by and through a pattern racketeering acitivity [sic] [sic] in violation of U.S.C 1962(c).

164. At all times relevant to this complaint, the defendants were persons employed by and or associated with the enterprise engaged in, and whose activities affect, interstate commerce, conducted and or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

165. The pattern of racketeering engaged in by the defendants, involved five separate but related schemes, in four (4) different counties, and two (2) different states, carried out from at least 1999 to the present, and directed at the Plaintiff. These schemes included:

(1) Montgomery County, Ohio. Tonya Marie Coffey (Nelgon) convinces the child support enforcement personnel to violate the state IV -D plan, approved by the Secretary for Health and Human Services, for the purpose of : (1) exdorting over $16,000 from the plaintiff, (2) illegally garnishing the plaintiffs wages to the extent that the plaintiff faced eviction, (3) forcing the plaintiff to have to work two jobs just to survive, (4) tarnishing the plaintiff credit reports, (5) suspending the plaintiff's drivers license, (6) suspending the plaintiffs professional license,

        (continued...)

again, he fails to state a claim.

Section 1962(c) provides:

(c) It shall be unlawful for any person <u>employed by or associated with any enterprise</u> engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. (Emphasis added).

---

[17]       (...continued)
thereby, (7) preventing the plaintiff from being able to conduct business anywhere in the country, and (8) all the while preventing any and all contact between the plaintiff and his children.

(2) Clark County, Ohio. Tonya Marie Coffey (Nelson) convinces the child support enforcement personnel to violate the state IV -D plan approved by the Secretary for Health and Human Services, for the purpose of : (1) having the plaintiff wrongfully incarcerated, (2) extort monies from the plaintiff, (3) seize the plaintiffs bank account, (4) seize the plaintiffs tax returns, (5) prevent the plaintiff from being able to conduct business anywhere in the country, and (8) all the while preventing any and all contact between the plaintiff and his children.

(3) Suffolk County, Massachusetts. Tonya Marie Coffey (Nelson), through the Ohio child support enforcement agency, solicits, encourages, and/or convinces the Massachusetts child support enforcement agency to continue to threaten and take from the plaintiff every asset he is able to accrue. All the while maintaining fraudulent arrearage charges against the plaintiff, to maintain undue hardships upon the plaintiff by requiring the plaintiff to support two households while taking from the plaintiff, his bank account, his drivers license, his professional license, his tax returns, etc.
(4) Brockton, Massachusetts. Tonya Marie Coffey (Nelson) obsessively seeking, then locating the plaintiffs last three places of employment for the purpose of maintaining her interstate stalking and predatory behaviour.

(5) The Defendant, Tonya Marie Coffey (Nelson) coercing the child support enforcement agency - in three counties, and two states - to move to wrongfully, and illegally incarcerate the plaintiff.

166. The pattern of racketeering engaged in by the defendants, involved fraudulent acts in support of the above schemes , mail fraud (18 U.S.C 1341), wire fraud (18 U.S.C 1343), Interference with commerce, robbery, or extortion ( 18 U.S.C 1951(n) ), Racketeering ( 18 U.S.C 1952(x) ), and the Hobbs Act ( 18 U.S.C 1951 ), all of which is "racketeering activity" as defined in 18 U.S.C 1961(b). And at least two of the racketeering acts are connected by a common scheme, plan, or motive.

167. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) has and is,suffering damage to his business and property.

168. The predicate acts committed by the defendants relating to and include, but are not limited to, those described earlier in this complaint and the following:

(1) Mail Fraud 18 U.S.C 1341(h)
(2) Wire Fraud 18 U.S.C 13430)
(3) Interference with commerce, robbery, or extortion 18 U.S.C M1(n)
(4) Racketeering 1$ U.S.C 1952(x) (5) The Hobbs Act

(Emphasis added).

Under Count 3 of his complaint, plaintiff alleges that the <u>defendants</u> referred to in the complaint were, and comprised, the <u>enterprise</u>.[18]  But, once again, that does not make out a claim under Section 1962(c).  The Court of Appeals likewise indicated in *Compagnie de Reassurance, supra*, at 92), consistent with established precedent in this Circuit and elsewhere::

> As to the § 1962(c) claim, the district court stated that "the three Defendants were [not] separate persons."   In fact, however, NERCO, First State, and Cameron & Colby were distinct corporate entities, with separate legal identities.   The distinction between those three entities is not, however, decisive for § 1962(c) purposes.   <u>The statute requires that the person (i.e., the three defendants) engaged in racketeering be distinct from the enterprise (in this case, Graham Watson, not a defendant) whose activities he or she seeks to conduct through racketeering.</u>   <u>See, e.g., Miranda v. Ponce Federal Bank</u>, 948 F.2d 41, 44-45 (1st Cir.1991) (citing cases) ("the same entity cannot do double duty as both the RICO defendant and the RICO enterprise").

In this case, plaintiff has conflated the enterprise and the defendants.  He alleges that the defendants are one and the same.  This is, as indicated in *Compagnie de Reassurance, supra*, and other established precedent, fatal to his Section 1962(c) claim.  This court accordingly recommends that Count 3 be dismissed as well for failure to state a claim upon which relief may be granted.

4.    <u>RICO Conspiracy - 18 U.S.C. § 1962(d) - Count 4</u>

In Count 4 of the complaint, plaintiff, obviously covering all bases and not leaving a stone, much less a statute, unturned, attempts to fashion a RICO conspiracy.

---

[18]        To wit, in Paragraph 161 of his complaint:

161. At all times relevant to this complaint, <u>the defendants constituted an association-in-fact, characterized by (1) a common purpose, (2) an ongoing formal organization, and (3) were personnel who functioned as a continuing unit.</u> (Emphasis added).

Since, however, he specifically pleads in Count 4 that the defendants and the enterprise were one and the same,[19] and specifically pleaded that the acts of racketeering - as opposed to the income in an enterprise or the acquisition of an enterprise - caused the injury to his property and his business,[20] the conspiracy claim likewise fails for the reasons set forth above, and must be dismissed for failure to state a claim upon which relief may be granted.

     5.   <u>Mail Fraud - 18 U.S.C. § 1341 - Count 5</u>

In Count 5, plaintiff alleges that the defendants, and each of them, engaged in acts of mail fraud in violation of the provisions of the mail fraud statute (18 U.S.C. § 1341). Even if true, however, plaintiff fails to state a claim for relief for the simple reason that the mail fraud statute is a criminal statute, and does not provide for a private remedy. As it was held in *Wisdom v. First Midwest Bank, of Poplar Bluff*,167 F.3d 402, 407-408 (8th Cir. 1999)):

> A criminal statute may provide an implied private right of action if Congress so intended in enacting the criminal statute. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (holding that a private remedy will not be implied unless legislative intent can be inferred from statutory language or elsewhere). Whether 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1951 (extortion) provide private rights of action are questions of first impression in the Eighth Circuit. We consider four factors in determining whether a private right of

---

[19]    To wit:

171 At all times relevant to this complaint, the defendants and the non-party child support enforcement agency, constitute an enterprise characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who functioned as a continuing unit.

[20]    To wit:

178. As a result of the pattern of racketeering activity, the plaintiff ( as well as many, many other Fathers) suffered damage to his business and property.

action exists: (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether Congress intended, explicitly or implicitly, to create such a remedy; (3) whether a private remedy is consistent with the underlying legislative scheme; and (4) whether a private right based on a federal statute would interfere with an area relegated to state law. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Congressional intent is the final touchstone and the Cort factors have been limited to providing evidence of Congress's intention to create a private right of action. *See Thompson*, 484 U.S. at 189, 108 S.Ct. 513 (Scalia, J., concurring) (indicating Cort was essentially overruled by *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)); *Furrer v. Brown*, 62 F.3d 1092, 1100 (8th Cir.1995) (noting that *Cort* is only a guide to determining Congressional intent, citing *Thompson and Touche Ross* ), cert. denied, 517 U.S. 1167, 116 S.Ct. 1567, 134 L.Ed.2d 667 (1996).

The Supreme Court reviewed the legislative history of the mail fraud statute in assessing the breadth of criminal activity within the statute's scope. *See McNally v. United States*, 483 U.S. 350, 356-57, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The Supreme Court concluded that the sparse legislative history "indicates that the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property." *Id.* at 356, 107 S.Ct. 2875. It is not enough, however, that a statute intends to benefit a class of persons. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 17-18, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (stating that although Congress clearly intended to benefit the plaintiff by placing fiduciary duties on the defendant, whether those duties were enforceable by a private action is another question). Congressional intent is the determining factor and is not merely to be weighed against the other Cort factors. *See Thompson*, 484 U.S. at 179, 108 S.Ct. 513. Though the legislative history according to McNally is not inconsistent with a private right of action, consistency is not enough. There is no clear indication that Congress intended to create such a right.

Other courts that have considered this issue have found no private right of action. *See Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178 (6th Cir.1979) (finding the scant legislative history of the mail fraud statute to indicate an intent to punish dealers of fraudulent devices for using the United States mails but not an intent to create a private right of action); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir.1977) (finding no implied private remedy under mail fraud statute); *Napper v. Anderson, Henley, Shields, Bradford and Pritchard*, 500 F.2d 634, 636 (5th Cir.1974) (same under wire fraud statute), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65,

46 L.Ed.2d 56 (1975). Though a bare criminal statute does not necessarily preclude an implied private right of action, there should "at least [be] a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort*, 422 U.S. at 79, 95 S.Ct. 2080; see also Ryan, 611 F.2d at 1178. Neither the mail fraud statute nor its legislative history provides for any remedy other than criminal sanctions. Thus, we agree with the Fifth and Sixth Circuits and hold that Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes.

*See also*, Gibbs v. SLM Corp., 336 F.Supp.2d 1, 17 (D.Mass 2004 Report and Recommendation of Dein, M.J., approved and adopted by Saris, D.J. ).[21]  Count 5 fails to state a claim upon which relief may be granted.

6.    Hobbs Act - 18 U.S.C. § 1951 - Count 8

In Count 8, plaintiff alleges that the defendants, and each of them, engaged in acts of racketeering and extortion in violation of the provisions of the Hobbs Act (18 U.S.C. § 1951).   Again, however, even if true, Count 8 fails to state a claim

---

[21]    There the court observed (*Id.*):

In Count VIII of his Complaint, Gibbs contends that "[t]he Defendants committed numerous counts of Federal Mail Fraud in violation of federal statute 18 U.S.C. § 1341 by sending lulling letters designed to prevent students from seeking justifiable and equitable relief in a court of law." (Compl.¶ 47). It is well established that there is no private cause of action under the mail fraud statute which is "a bare criminal statute with no indication of any intent to create a private cause of action, in either the section in question or any other section." *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178-79 (6th Cir.1979), and cases cited. *Accord Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir.1999) (complaint alleging violation of 18 U.S.C. § 1341 dismissed as there is no private right of action under the mail fraud statute), and cases cited.

Gibbs contends that *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), recognizes a private cause of action for mail fraud. This court disagrees. In Sedima, the Court held that a private RICO action may be maintained even though the defendant had not been criminally convicted of the predicate act, including mail fraud. 473 U.S. at 493, 105 S.Ct. at 3283. Thus, the Court stated, under the language of the RICO statute, "racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be." *Id.* at 488, 105 S.Ct. at 3281. The civil, private, cause of action under RICO is expressly provided for by the statute. *See id.* at 483, 105 S.Ct. at 3278. There is nothing in *Sedima*, however, which created a civil cause of action for mail fraud. *See also Swartz v. Schering-Plough Corp.*, 53 F.Supp.2d 95, 105 (D.Mass.1999) ("[w]hile mail fraud can be the predicate of a civil RICO action," there is no separate private right of action for mail fraud). For these reasons, Count VIII should be dismissed.

upon which relief may be granted for the reason that the Hobbs Act statute, not unlike the mail fraud statute, is a criminal statute which provides no private implied right of action. *See Wisdom*, *supra*, at 408-409.[22]  For that reason, Count 8 must be dismissed as well.

  7. <u>The remaining state law claims</u>

    We have indicated above that all of plaintiff's federal question claims (Counts 1 through 6) must be dismissed for failure to state a claim upon which relief may be granted.  Those are the only claims that grant this court subject matter jurisdiction.[23]  Under the provisions of 28 U.S.C. § 1367,[24] this court has the discretion

---

[22]  There that court observed, looking to other precedent (*Id.*):

    Though fewer courts have addressed the issue of a private right of action under the extortion statute, those that have found it to be a bare criminal statute with no support for a private cause of action in the legislative history. *See American Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F.Supp. 1473, 1497 (D.Minn.1991) (finding no private right of action under extortion statute which is "purely criminal in nature"), *aff'd and remanded*, *American Computer Trust Leasing v. Boerboom Int'l, Inc.*, 967 F.2d 1208, 1214 (8th Cir.) ("[W]e affirm the district court's order in all respects."), *cert. denied*, 506 U.S. 956, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992); Peterson v. Philadelphia Stock Exch., 717 F.Supp. 332, 336 (E.D.Pa.1989) (finding no legislative intent from the statute or its legislative history to imply a private cause of action under 18 U.S.C. § 1951; *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097, 1099 (D.Colo. 1986) (no private right of action under extortion statute). We agree that neither the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action. We hold, therefore, that the district court correctly dismissed the Wisdoms' claims based on a private right of action under 18 U.S.C. §§ 1341, 1343, and 1951.

[23]  As the Ohio defendants correctly observe, plaintiff says nothing specific about subject matter jurisdiction - *i.e.*, "This court has subject matter jurisdiction over the action pursuant to 28 U.S.C ." (Complaint, p. 3).

    The subject matter jurisdiction of this court cannot be founded on diversity (28 U.S.C. § 1332), since, under hoary and settled precedent, diversity jurisdiction requires <u>complete</u> diversity, *e.g.*, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d 136, 139 (1st Cir. 2004); *Littlefield v. Acadia Insurance Company,* __ F.3d __, 2004 WL 2809230 * 1 n. 2 (1st Cir. December 8, 2004). In this case, plaintiff specifically alleges that he is a citizen of Massachusetts, and that the defendant Commissioner of the Department of Revenue of the Commonwealth of Massachusetts is a citizen of Massachusetts - therefore destroying complete diversity.

[24]  That statute provides in pertinent part:

§ 1367. **Supplemental jurisdiction**

                                        (continued...)

to decline jurisdiction over state law claims which are supplemental to the federal claims where all of the federal claims have been dismissed.  That is particularly true where the federal claims have been dismissed in the early stages of litigation. As the Court stated in  *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995):

> As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims. *See*, *e.g.*, *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir.1995) (affirming the dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed").

> *See also*, *Gonzalez-De-Blasini v. Family Dept.*, 377 F.3d 81, 88 (1st Cir. 2004).[25]

---

[24]        (...continued)

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*        *        *        *        *

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–

   (1) the claim raises a novel or complex issue of State law,

   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

   (3) the district court has dismissed all claims over which it has original jurisdiction, or

   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. (Emphasis added).

[25]        There the First Circuit reiterated (*Id.*):

(continued...)

In this case, the remaining state law claims involve, among other things, questions of state law *vis a vis* family court matters - matters not normally within the ken of the federal courts - and the federal claims are recommended to be dismissed in the very early stages of the litigation.[26]  Accordingly, to the extent that there is any substance and merit to plaintiff's remaining state law claims, and on this it seems not,[27] this court recommends that the district judge to whom this case is assigned, decline to exercise jurisdiction over the supplemental state law claims.

8.    Conclusion

For the reasons set forth above, this court recommends[28] that the district

---

[25]        (...continued)
Under 28 U.S.C. § 1367, "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction." 28 U.S.C. § 1367(c); *see Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 104, 2004 WL 1557905, *4 (1st Cir. July 13, 2004). We review a district court's decision not to exercise supplemental jurisdiction for abuse of discretion. *See Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 200 (1st Cir.2000). "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit ... will trigger the dismissal without prejudice of any supplemental state-law claims." *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995).

[26]        Indeed, insofar as this court can discern, the Commissioner of the Federal Office of Child Support Division of the United States Department of Health and Human Resources has not even been properly served as of this date.

[27]        For one thing, it seems quite obvious, as urged by the Ohio defendants, that this court lacks *in personam* jurisdiction over the Ohio defendants.  Additionally, even if this court did have *in personam* jurisdiction over the Ohio defendants, it appears again quite obvious that Judge Salway would enjoy absolute judicial immunity for his judicial acts, and that the other Ohio defendants who took one sort of action or another to carry out the child support and other orders of Judge Salway, and the Commissioner of Revenue of the Commonwealth of Massachusetts as well, would enjoy absolute quasi-judicial immunity for those acts. *Cf.*, *Babcock v. Tyler*, 884 F.2d 497, 501-03 (9th Cir.1989) (noting that absolute prosecutorial immunity extends to child protective services workers who execute court orders for seizure and placement of a child), *cert. denied*, 493 U.S. 1072 (1990); *Coverdell v. Department of Social & Health Servs.*, 834 F.2d 758, 764 (9th Cir.1987); *Johnson v. Granholm*, 662 F.2d 449 (6th Cir.1981), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982).

[28]        The parties are hereby advised that under the provisions of Rule 72(b) of the Federal Rules of Civil Procedure and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file specific and  written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further
(continued...)

judge to whom this case is assigned (1) dismiss Counts 1 through 5 and Count 8 for

failure to state a claim upon which relief may be granted; and (2) dismiss the remaining

supplemental state law claims without prejudice.[29]

_____

UNITED STATES MAGISTRATE JUDGE

_____

[28]    (...continued)
advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. *See Keating* v. *Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States* v. *Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc.* v. *Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States* v. *Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott* v. *Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also*, *Thomas* v. *Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985).

[29]    As we have indicated above, note 11, *supra*, the Commissioner of the Federal Office of Child Support Division of the United States Department of Health and Human Resources has also filed a motion to dismiss based on failure to complete service, but that motion has not, as of yet, been referred to this court.  No matter what the disposition of that motion, however, it is readily apparent that plaintiff's action against the Commissioner of the Federal Office of Child Support Division is also doomed for failure in this court for the same reasons that the action against the remaining defendants fails as indicated in the text above.  So, too, with the defendant Tonya Marie Coffey, who, insofar as this court can discern, as not filed any motions to date.